ENTERED
CLERK, U.S. DISTRICT COURT
DEC 22 1999
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
DEC 21 1999
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA MONICA BAYKEEPER, a non profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>SUNLITE SALVAGE, INC., a corporation; JAY LIGHT, an individual; GLICK BROS. LUMBER CO., a corporation,<br><br>Defendants.<br><br>_____<br><br>GLICK BROS. LUMBER CO., a corporation,<br><br>Cross-Claimant,<br><br>v.<br><br>SUNLITE SALVAGE, INC., a corporation,<br><br>Cross-Defendants. | Case No.: CV. 99-04578 WDK (RCx)<br><br>The Honorable William Keller<br>United States District Court Judge<br><br>(Proposed)<br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date: 25 October, 1999<br>Time: 3:00 p.m.<br>Place: Courtroom 1600<br><br>THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).<br><br>ENTERED ON ICMS<br>DEC 22 1999<br>CV |

Plaintiff Santa Monica BayKeeper ("BayKeeper") moves for partial summary judgment as to defendant SunLite Salvage, Inc.'s ("SunLite") and defendant Jay Lite's ("Lite") (collectively "Defendants") liability under the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"). The matter was heard on October 25th, 27th and 28th 1999. Having considered all of the papers filed by the parties and oral argument on the motion, the Court GRANTS BayKeeper's motion for partial summary judgment in part.

___ Docketed
___ Copies / NTC Sent
___ JS - 5 / JS - 6
___ JS - 2 / JS - 3
___ CLSD

DEC 22 1999

## FACTUAL BACKGROUND

In its continuing effort to clean up the Los Angeles River and San Pedro Bay, BayKeeper brings this citizen suit, pursuant to Section 505(a) of the Clean Water Act ("the Act"), 33 U.S.C. § 1365. The SunLite Salvage yard is located at 2213 E. Manchester Ave., Los Angeles, California ("the Yard"). The SunLite Yard is bordered by E. Manchester to the south, by 85th Street to the north, and by an alley ("the Alley") to the east. The Alley is also the western border of a lot that Defendants have used for their scrap metal operations since at least March of 1999 ("the Lot"). The Lot is bordered to the north by 85th Street, to the south by E. Manchester and to the east by South Alameda Street. The Yard, the Lot, 85th Street, and the Alley are collectively referred to as the "Facility." Defendants have operated the SunLite scrap metal Facility since January 1994.

Plaintiff seeks summary judgment as to Defendants' liability for violations of the Act based on the following causes of action: (1) discharges of contaminated storm water in violation of permit prohibitions; (2) failure to develop and implement an adequate storm water pollution prevention plan ("SWPPP") in violation of permit prohibitions; and (3) failure to develop and implement an adequate monitoring and reporting plan ("MRP") in violation of permit prohibitions.

## STATUTORY FRAMEWORK

The purpose of the Clean Water Act is to "restore and maintain the chemical, physical and biological integrity of the nation's waters." 33 U.S.C. § 1251(a). Section 301(a) of the Act prohibits all discharges not authorized by or in violation of the terms of a National Pollutant Discharge Elimination System permit ("NPDES permit") issued pursuant to Section 402 of the Act. In order to achieve the purpose of the Act, every NPDES permit must include those effluent limitations necessary to achieve "water quality standards," or standards adopted pursuant to the Act which protect identified uses of the receiving waters, such as swimming, fishing, and wildlife habitat. 33 U.S.C. § 1311(b)(1)(C). Section 402(p) of the Act establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program. 33 U.S.C §1342(p). States with approved NPDES programs are

2

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY    CASE NO. CV-99-4578 WDK (RCx)

authorized by Section 402(p) to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C § 1342.

California, through the State Water Resources Control Board, has elected to issue a statewide Industrial Activities Storm Water General Permit ("General Permit") to regulate industrial storm water discharges. The General Permit implements the requirements of the Act based on both technology based requirements and water quality based requirements which are parallel and complimentary. Thus the General Permit requires dischargers to implement Best Available Technology ("BAT") to control storm water pollution (General Permit, Provision B(3)); to develop and implement a SWPPP (General Permit, Section A(1)); and to visually monitor, sample storm water, and report annually to demonstrate compliance with the General Permit (General Permit, Section B(4), (5), (14)). Compliance with the BAT requirement is determined by demonstrating that pollutant concentrations in storm water discharges are below the "benchmark levels" set out by EPA. 60 Fed. Reg. 50824, Sept. 29, 1995. In addition, the General Permit protects water quality by prohibiting discharges of storm water which "cause or contribute" to an exceedance of any applicable water quality standard contained in a Statewide Water Quality Control Plan or the applicable Regional Water Quality Control Board's Basin Plan. General Permit, Receiving Water Limitation C(2).

## DISCUSSION

### I. Standard for Summary Judgment

Under Fed. R. Civ. P. 56(e), the party opposing a properly made and supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." This Court must decide whether there exists "any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250 (1986).

An issue is genuine if there is evidence produced that would allow a reasonable jury to reach a verdict in favor of the non-moving party. *Id.* at 248. "Therefore, a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment;

1 rather the non-moving party must introduce some significant probative evidence tending to
2 support the claim." *Summers v. Teichert & Sons*, 127 F.3d 1150, 1152 (9th Cir. 1997).
3    II.   **Plaintiff BayKeeper's Motion for Summary Judgment**
4         Plaintiff BayKeeper advances two arguments relating to Defendants' failure to comply
5 with the technology based requirements of the General Permit: (1) that Defendants violated the
6 General Permit and the Act by failing to develop or implement any SWPPP between January
7 1994 and January of 1998, and that Defendants continue to violate the General Permit based on
8 the inadequacy of the SWPPP eventually developed; and (2) that Defendants violated the
9 General Permit and the Act by failing to conduct any sampling and monitoring between January
10 1994 and November of 1998, and that the sampling and monitoring conducted after November
11 1998 was inadequate. BayKeeper also argues that Defendants violated the discharge
12 prohibitions and receiving water limitations of the General Permit by discharging storm water
13 containing pollutants. Defendants contest each of these claims, and argue that BayKeeper lacks
14 standing to file suit.

15    A.   **Defendants Violated the Act by Failing to Develop and Implement an Adequate SWPPP**
16
17        1.   **Defendants Had No SWPPP for their Operations From January 1994 to January 1998**
18
19       BayKeeper argues that based on Defendants own documents, Defendants failed to
20 develop or implement a SWPPP for Defendants' scrap metal operation prior to February of
21 1998. The Defendants do not dispute this claim. The General Permit requires that industries
22 covered by the Permit must develop and implement a SWPPP prior to beginning industrial
23 operations. General Permit, Provision A(1) and Attachment 3, Section VII. Therefore, the
24 Court finds that Defendants' failure to develop and implement a SWPPP for the Facility
25 between January 1994 and January 1998 is in violation of the General Permit and the Act.
26 ///
27 ///
28 ///

4

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY   CASE NO. CV-99-4578 WDK (RCx)

### 2. Defendants' SWPPP Fails to Achieve the BAT Requirement of the General Permit

BayKeeper further argues that although the Defendants developed a SWPPP in 1998, it is inadequate. BayKeeper points to the sampling data collected both by BayKeeper and the Defendants, which indicates that Defendants' discharge storm water containing concentrations of pollutants well above benchmark levels set out in the EPA Multi-Sector Permit. The benchmark levels set out in the EPA Multi-Sector Permit provide an objective standard to determine if BAT has been implemented; if storm water containing concentrations of toxic pollutants above benchmark levels is being discharged, further BMPs are required and thus BAT is not being achieved. 60 Fed. Reg. 50824, Sept. 29, 1995. Therefore, the Court finds that the Defendants' discharges of storm water containing pollutant concentrations above benchmark levels demonstrates Defendants' failure to achieve BAT in violation of the General Permit.

### 3. The SWPPP Fails to Include Storm Water Control Measures Implemented at the Yard

BayKeeper next argues that the SWPPP is inadequate for failing to describe berms and oleophilic socks which Defendants has installed at the Yard. The General Permit requires that the SWPPP describe all Best Management Practices to be implemented at the facility for all potential pollutants. General Permit, Section A(8). The SWPPP prepared by Defendants fails to include the use of berms and oleophilic socks at the Yard. Therefore, the Court finds that the Defendants failure to include the berms and oleophilic socks in the SWPPP is in violation of the General Permit and the Act.

### 4. The Placement of Filter Socks Fails to Meet the BAT Requirement of the General Permit

BayKeeper also argues that the SWPPP is inadequate because the primary storm water pollution control measure adopted by the Defendants, oleophilic filter socks at two discharge points, does not meet the BAT requirement of the General Permit. BayKeeper maintains that the filter socks placed at the two discharge points are designed primarily to reduce oil and

grease in storm water, not to remove metals such as those in the Defendants' discharge, and that the inadequacy of the Defendants' measures are confirmed by sampling data, showing pollutant concentrations far above benchmark levels. The Defendants provide no meaningful evidence to dispute BayKeeper's position. Therefore, the Court finds that oleophilic socks do not constitute BAT for storm water pollution control at the Defendants' scrap metal Facility, in violation of the General Permit.

### 5. The SWPPP Fails to Address Defendants' Use of 85th Street and the Alley for their Operations

BayKeeper also argues that the SWPPP is inadequate for failing to include the Defendants loading, unloading, and material transfer operations on the streets adjacent to its Yard. BayKeeper provided declarations, including photographs, describing these operations by the Defendants, such as forklifts unloading dumpsters containing oily scrap metal and other materials. In the course of discovery, Defendants admitted that they use 85th Street for loading and unloading trucks. The General Permit requires that all operations at a facility which are potential sources of pollutants, must be included and considered in a facility's storm water pollution prevention plan. General Permit, Section A(4)(d & e), A(6) and (7). Therefore, the Court finds that the Defendants' failure to include their operations on 85th Street and the Alley in the SWPPP to be in violation of the General Permit and the Act.

### 6. The SWPPP Fails to Address Defendants' Use of the Lot for their operations

BayKeeper then argues that the Defendants' failure to develop a SWPPP which includes their scrap material handling and storage operations conducted at the adjacent Lot is a violation of the General Permit requirements. BayKeeper submitted extensive evidence of the Defendants' use of the Lot for scrap metal storage with exposed sources of storm water pollutants since April of 1999. In the course of discovery, Defendants admitted to their use of the Lot since March of 1999. Defendants respond that their use of the Lot is only temporary. However, the Court notes that the General Permit has no exclusion for temporary use, and that the criteria for inclusion in the SWPPP and other General Permit compliance documents is

pollutant exposure, not duration of use. Therefore, the Court finds that the Defendants' failure to include the Lot in its SWPPP is in violation of the General Permit and the Act.

### 7. The SWPPP Fails to Address Track-off

Finally, BayKeeper argues that the failure of the Defendants to address the track off of pollutants from their Facility in the SWPPP is a violation of the General Permit. BayKeeper again submitted evidence, including photographs, of the track-off problem caused by Defendants' operations, and Defendants provide no evidence to dispute BayKeeper's position. The General Permit requires that all potential pollutant sources at a facility be identified and addressed in the SWPPP. General Permit, Section A(6), and (7). Therefore, the Court finds that Defendants' failure to address track off of pollutants in the SWPPP is in violation of the General Permit and the Act.

### B. Defendants Violated the Act by Failing to Develop and Implement an Adequate Monitoring and Reporting Plan

As with the SWPPP, BayKeeper argues that the Defendants violated the Permit and the Act by operating its Facility either without a MRP, or with an inadequate MRP which was inadequately implemented.

#### 1. Defendants Failed to Develop or Implement an MRP for its Operations From January 1994 to February 1998

Defendants do not dispute that until February 1998, Defendants had no MRP for its scrap metal operation. The General Permit requires that Defendants develop and implement a MRP for their operations prior to beginning industrial operations. General Permit, Provision B(1); Attachment 3, Section VII. The Court finds that the Defendants' failure to develop and implement a MRP prior to February 1998 is in violation of the General Permit and the Act.

#### 2. Defendants Have Failed to Monitor and Report as Required By the General Permit Since January 1998

BayKeeper argues that even since February 1998, when Jay Lite drafted the MRP for SunLite, Defendants have failed to sample and monitor as required by the Permit, due both to

the inadequate MRP, and the Defendants' failure to follow the procedures set forth in the MRP.

### i. Defendants Failed to Monitor and Report for the 1997-1998 Wet Season.

BayKeeper maintains that despite the Defendants' assertions to the contrary, a review of rain data for the 1997-98 rainy season indicates that in fact rain events of sufficient size to generate run-off occurred on business days, during SunLite's business hours and following three days of dry weather. BayKeeper has submitted rain data and the declaration of its expert to establish that each of these days qualified for sampling as required by the General Permit. The Defendants have submitted no meaningful evidence to refute BayKeeper's position. Therefore, the Court finds that the Defendants' failure to sample in the 1997-98 wet season, despite opportunities to do so, is in violation of the General Permit and the Act.

### ii. The Defendants Sampled and Analyzed One, Rather than Two, Rain Events in 1998-1999

BayKeeper next argues that the Defendants failed to sample and analyze twice at each identified discharge point as required in the 1998-1999 wet season. BayKeeper again submits rain data and interpretive declarations in support of its position that ample qualifying rain events occurred which would have allowed the Defendants to sample. Defendants again submit no meaningful evidence which would create a dispute as to these facts. Therefore, the Court finds that the Defendants' failure to sample and analyze twice at each discharge location at the Facility is in violation of the General Permit and the Act.

### iii. The MRP Fails to Address the Lot.

Finally, BayKeeper argues that the Defendants' failure to include the Lot in the MRP is in violation of the Act. As set out above, the Defendants' argument that temporary use is not included in General Permit coverage is not supported by the language of the Permit. Therefore, the Court finds that the Defendants' failure to include the Lot in their MRP is in violation of the General Permit and the Act.

### C. Defendants' Discharges of Storm Water Containing Pollutants Violates the Receiving Water Limitations of the General Permit

BayKeeper argues that the Defendants' discharges of pollution in the Facility's storm water, which then flows to the Los Angeles River and San Pedro Bay, violates the receiving water limitations of the General Permit. BayKeeper points to sampling data collected by BayKeeper and the Defendants at the Facility, and to sampling data collected by Los Angeles County at storm drains discharging to the Los Angeles River. The level of pollutants in these samples are well above levels set forth by EPA in its National Toxics Rule (40 C.F.R. § 131.36) and by the State Water Resources Control Board in its Water Quality Control Plan for Ocean Waters of California ("Ocean Plan"), demonstrating that the Defendants' discharges cause or contribute to a violation of water quality standards. Finally, BayKeeper points out that the Los Angeles River and San Pedro Bay are already listed as impaired, or above water quality standards, by the EPA and the Regional Board. BayKeeper then argues that the Defendants have discharged pollutants at levels above water quality standards in violation of the Permit during each rain event over 0.1 inches since 1994.

The Defendants argue that the pollutants discharged from its scrap metal operations never reach receiving waters in sufficient concentrations to cause or contribute to environmental harm. The Defendants cite to a vague "natural purification" mechanism for removing pollutants, but provide no basis or independent verification of this process. Further, the Defendants do not credibly contest the validity of the data relied on by BayKeeper.

The Court notes that the standards applied by BayKeeper to determine whether storm water discharges cause or contribute to exceedances of water quality standards in Los Angeles area receiving waters in violation of the General Permit, the National Toxics Rule and the Ocean Plan, are those used by the Regional Water Quality Control Board. *See Regional Board Order No. 99-060, p. 34.* Therefore, the Court finds that the Defendants' discharges of storm water containing pollutants in excess of levels set out in the National Toxics Rule and/or the Ocean Plan causes or contributes to exceedances of water quality standards in the Los Angeles River and San Pedro Bay, in violation of the receiving water limitations of the General Permit.

BayKeeper has not provided sufficient evidence to support its allegation that the Defendants' discharge these concentrations of pollutants during every substantial rain event, however. The Defendants' operations may change from month to month, changing pollutant concentrations at the site. Therefore, the Court grants summary judgment for each of the eight discharges of contaminated storm water causing and/or contributing to a violation of the General Permit receiving water limitations on those occasions where sampling was conducted. The Court denies summary judgment as to BayKeeper's claim for receiving water limitation violations for each rain event at or over 0.1 inches.

## CONCLUSION

BayKeeper's motion for summary judgement is granted in part and denied in part. Defendant SunLite Salvage Inc. is liable for its violations of the General Permit and the Act for its failure to develop and implement an adequate SWPPP and MRP every day since January 1994. Defendant Jay Lite is liable for his failure to develop and implement an adequate SWPPP and MRP every day since September 1, 1995, the date subsequent to his bankruptcy filing. Defendants are liable for discharging storm water in violation of the receiving water limitations of the General Permit on seven occasions.

IT IS SO ORDERED.

Dated: 12/15/99

WILLIAM D. KELLER
UNITED STATES
DISTRICT COURT JUDGE